IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |
| SEVA BRODSKY, ) | |
| ) | No. 09-10007 NMG |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| NEW ENGLAND SCHOOL OF LAW, ) | |
| ) | |
| Defendant ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | |

## PLAINTIFF SEVA BRODSKY'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Now comes the Plaintiff, Seva Brodsky, by and through his attorney, James M. Baron, and hereby respectfully requests this honorable Court to deny the Defendant's Motion to Dismiss.  In support of this opposition, the Plaintiff encloses the within Memorandum of Law.


Respectfully submitted,

Seva Brodsky,

By his attorney,

*/s/ James M. Baron*
James M. Baron, BBO #669257
jbaron@lawbaron.com
Law Office of James M. Baron
9 Spring Street
Waltham, MA  02451
Tel (781) 209-1166

Dated: February 9, 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
SEVA BRODSKY,                           )
                                        )        No. 09-10007 NMG
                Plaintiff               )
                                        )
        v.                              )
                                        )
NEW ENGLAND SCHOOL OF LAW,              )
                                        )
                Defendant               )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SEVA
BRODSKY'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**I.      INTRODUCTION**

Plaintiff Seva Brodsky submits this Memorandum of Law in support of his

opposition to defendant New England School of Law's ("NESL") Motion to Dismiss.

Mr. Brodsky, a former law student at NESL, filed an amended complaint with the

Massachusetts Superior Court on December 15, 2008.  The amended complaint contained

counts for discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §

12101 et seq. ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §

794 et seq. ("Section 504"), as well as violation of Amendment Article 114 of the

Massachusetts Constitution's Declaration of Rights ("Article 114"), violation of the

Massachusetts Equal Rights Act, G.L. c. 93, § 103(a) ("MERA"), violation of the

Massachusetts Consumer Protection statute (G.L. c. 93A), and breach of contract.

NESL's motion should be denied, because NESL fails to meet its burden of showing that Mr. Brodsky has not stated a claim.

## II.     FACTUAL BACKGROUND

Mr. Brodsky worked as an electronic and software engineer for sixteen years prior to applying to NESL in February 2003.  Compl. ¶ 3.  He was admitted to the evening division of NESL in July 2003, but transferred to the day division in 2004.  *Id.* at ¶¶ 3-4. Mr. Brodsky passed all of his courses at NESL, until the spring of 2005, when he was expelled from NESL after receiving grades of "F" in Constitutional Law and Criminal Procedure.  *Id.* at ¶¶ 4-5.

On August 22, 2005, Mr. Brodsky underwent a psychiatric evaluation by Dr. Judith Robinson at the New England Medical Center.  Compl. at ¶ 6.  Dr. Robinson referred Mr. Brodsky for a neuropsychological evaluation due to memory problems that she found.  *Id.*

On September 28, 2005, Mr. Brodsky underwent a neuropsychological exam with Dr. Rimma Kovalcik.  Compl. ¶ 7.  Dr. Kovalcik determined that Mr. Brodsky possessed superior verbal, cognitive, and analytical abilities, but that he suffered from poor executive functioning and memory abilities.  *Id.*  In particular, Mr. Brodsky showed significant deficits in visual-spatial reasoning skills, executive/organizational abilities, short-term memory, and the ability to learn information presented orally.  *Id.*  According to Dr. Kovalcik, Mr. Brodsky's mental deficits were consistent with long-term damage to the brain, which Mr. Brodsky possibly suffered as a result of an accident when he was younger.  *Id.* at ¶8.  Dr. Kovalcik concluded that Mr. Brodsky would be capable of academic success if provided with reasonable accommodations.  *Id.*

Mr. Brodsky requested a hearing for readmission, which was conducted at NESL on November 14, 2005.  Compl. ¶ 9.  At the hearing, NESL required Mr. Brodsky to prove by clear and convincing evidence that the circumstances that led to his academic failures no longer existed.  *Id.*  Mr. Brodsky presented documentation of his evaluation, diagnosis, and treatment regimen, to show that he was without knowledge of his disability at the time of his academic failures, but subsequently discovered the disability and the recommended accommodations to allow him to compensate for the disability.  *Id.* at ¶¶ 9, 18, 19.  As part of the November 2005 hearing, Mr. Brodsky requested both readmission to NESL and other accommodations as recommended by his doctors and clinicians.  Compl. ¶¶ 10, 18, 19.  The NESL Disciplinary Hearing Committee rejected his requests.  Compl. ¶ 10.

After the November 2005 hearing, Mr. Brodsky asked Dean Sorenson of NESL for advice on what he might do to improve his chances of readmission in the following year—the Fall of 2006.  Compl. ¶¶ 11, 51.  Dean Sorenson replied that the best evidence would be academic success in a relevant program of study.  Compl. ¶¶ 11, 51.  Dean Sorenson did not tell Mr. Brodsky that such coursework should be at an American or an ABA-approved law school, even after Mr. Brodsky made known the programs he was considering.  Compl. ¶ 51.  Based on Dean Sorenson's advice, Mr. Brodsky enrolled in, and successfully passed, six law classes at the Global Law Program at Haifa University School of Law. Compl. ¶¶ 12, 51.

NESL held a second hearing on July 21, 2006 to rule on Mr. Brodsky's request for readmission for the academic year beginning September 2006.  Compl. ¶¶ 13, 23, 24. NESL denied Mr. Brodsky's petition by letter dated July 28, 2006.  Compl. ¶ 13.

III.   **STANDARD OF REVIEW**

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007); *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).  The motion to dismiss must be denied if the facts in the complaint are sufficient to state a cause of action.  *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass. 2000) *aff'd*, 248 F.3d 1127 (1st Cir. 2000).  In order to survive a motion to dismiss, the complaint must contain enough factual allegations "to raise a right to relief above the speculative level."  *DOE v. Boston Public Schools*, 550 F.Supp.2d 170, 172 (D.Mass. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)).   In considering a motion to dismiss, "the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken".  *DOE v. Boston Public Schools*, 550 F.Supp.2d 170, 172 (D.Mass. 2008).

IV.   **ARGUMENT**

A.  **Mr. Brodsky Has Properly Stated a Claim That He Has a Disability Under the ADA, the Rehabilitation Act, and MERA.**

The first issue NESL raises is whether Mr. Brodsky has stated a claim that he is disabled within the meaning of the ADA.  *See* NESL Memo § IV(A).  Under the ADA, an individual is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A).  Learning is considered a major life activity.  28 C.F.R. § 36.104.  Mr. Brodsky's amended complaint

states facts which show that Mr. Brodsky does have a mental impairment which substantially limits his ability to learn.  Furthermore, NESL bases its argument that Mr. Brodsky is not disabled on law which has been explicitly overturned by Congress in the "ADA Amendments Act of 2008."

### 1.  The Facts Support Mr. Brodsky's Assertion That His Disability "Substantially Limits" His Ability to Learn

NESL focuses its argument of Mr. Brodsky's disability on the "substantially limited" aspect of the ADA definition.  *See* NESL Memo § IV(A).  NESL bases its claim that Mr. Brodsky has not satisfied the meaning of "disabled," and in particular "substantially limited," on two cases, *Healey v. Henderson,* 275 F.Supp.2d 40 (D. Mass. 2003), and *Marlon v. Western New England College*, No. 01-12199-DPW, 2003 WL 22914304 (D.Mass. Dec. 9, 2003).  *See also* (NESL Memo, §IV(A)).

*Healey* involved an employee of the United States Postal Service who alleged that she had been subjected to harassment and discriminatory treatment at work.  *Healey*, 275 F.Supp.2d at 41.  The plaintiff sought relief under the Family Medical Leave Act, the Rehabilitation Act of 1973, and federal and state laws prohibiting sex discrimination.  *Id.* Healey's Rehabilitation Act claim was based on her employer's refusal to reassign her because of depression *Id.* at 45.  Her claim was unrelated to learning disabilities. *Id.* The court granted the defendant's motion to dismiss because Healey did not allege "that any of her impairments actually prevent or restrict her from performing her duties as an employee…" *Id*.

In *Marlon*, the plaintiff was a law school student who, although she passed her exams, was deemed "no longer eligible to continue studies" because she did not meet the school's required grade point average.  *Marlon*, 2003 WL 22914304 at *1.  Marlon, who

had been under the care of a chiropractor for physical issues, successfully petitioned the law school for readmission with various accommodations, which included extended time on tests, a distraction-free environment in class, a note-taker, and the use of voice-recognition software for exams and papers. *Id.* at *1-3. As part of its decision to readmit Marlon, the law school also required that she repeat her first year courses. *Id.* at *2. Marlon was expelled from school for a second and final time because she again failed to attain the required grade point average, even with accommodations. *Id.* at *3. After her second dismissal, Marlon consulted with a neuropsychologist, who diagnosed "significant learning disabilities" that could be remediated with appropriate accommodations. *Id.* Marlon's petition for readmission from the second dismissal was not successful. *Id.*

*Wynne v. Tufts Univ. Sch. Of Med.*, 976 F.2d 791 (1st Cir. 1992) is a case very similar to *Marlon*. In *Wynne*, a medical student discovered a learning disability only after failing several first-year courses. *Id.* at 792. As in *Marlon*, the school provided many reasonable accommodations to the student after it was made aware of his disability. *Id.* After the student again failed two courses, the school again allowed him to retake the examinations in those two subjects. *Id.* Only after he failed one of those courses for a third time, even with accommodations, did the school finally expel him. *Id.* Among the factors that the court weighed in determining that Tufts did not discriminate were the many accommodations and opportunities to pass that the school offered Wynne. *Id.* at 795.

Both *Healey* and *Marlon* used the standard defined in *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) to determine whether the plaintiff met

the requirement of "substantially limited."  *Compare* Healey, 275 F.Supp.2d at 46 *with Marlon*, 2003 WL 22914304  at *8.  In *Toyota*, the Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Toyota*, 534 U.S. at 198.  This Court used that definition to find that the plaintiff in *Healey* had not met her burden of proving that her ailments had substantially limited her ability to perform her job. *Healey*, 275 F.Supp.2d at 46.  This Court also applied that same definition in *Marlon* to determine that because the plaintiff had not failed in other academic and professional areas of her life, her mere showing of a learning disability was not sufficient to meet the burden of proving a "substantial limitation." *Marlon*, 2003 WL 22914304 at *8.

*Healey*, *Marlon* and *Wynne* are all distinguishable from Mr. Brodsky's case. Healey had work-related claims based primarily on sexual harassment.  She did not allege that any of her disabilities prevented her from performing her job.  On the other hand, Mr. Brodsky's claim is unrelated to sexual harassment or work; it is based on a documented learning disability.  Furthermore, contrary to NESL's claim, Mr. Brodsky has asserted that his disability does substantially affect his ability to learn.

*Marlon* is distinguished from Mr. Brodsky's case in that Western New England College offered the plaintiff readmission with accommodations.  Similarly, in *Wynne*, because of the many accommodations allowed by the school, the college was found not to have discriminated against a student who discovered his disability after failing.  In both *Marlon* and *Wynne*, the school offered reasonable accommodations to a handicapped

student, as required by the ADA.  The plaintiffs in both cases were ultimately expelled only after the school attempted to address their disabilities; NESL, on the other hand, flatly refused to readmit Mr. Brodsky, with or without accommodations.  Because of the manner in which the schools responded to students with disabilities, *Marlon* is not nearly as "remarkably similar" to Mr. Brodsky's case as alleged by NESL.  *See* NESL Memo § IV(A).

To summarize, in contrast to NESL's claim, Mr. Brodsky has explicitly defined his disability, as well as its substantial effect on his ability to learn.  Compl. ¶¶ 6, 7 and 17.  The issue that remains is whether NESL offered Mr. Brodsky any reasonable accommodations.

### 2.    Congress Has Explicitly Corrected the Standard For "Substantial Limitation."

*Healey* and *Marlon* are both based on case and statutory law which is no longer valid.  The "ADA Amendments Act of 2008" changed the standard of substantial limitation as it had been defined by *Toyota*.  Pub. L. No. 110-325 (2008) [hereinafter ADAAA].  In the ADAAA, Congress declared that "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities; in particular, the Supreme Court, in the case of Toyota… interpreted the term 'substantially limits' to require a greater degree of limitation than was intended by Congress."  ADAAA § 2(a)(7).  The ADAAA explicitly rejects the *Toyota* standard of "substantially limited," and expresses Congress's intent "that the primary object of attention in cases … should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive

analysis."  ADAAA § 2(b)(4)-(5).  The ADAAA favors broad coverage of individuals, and directs that "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]."  ADAAA § 4(a).  Regarding the issue of whether a disability must affect multiple areas of one's life in order to be substantial, the ADAAA requires that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability."  *Id.*

Based on the ADAAA, NESL's application of *Healey* and *Marlon* to claim that Mr. Brodsky does not meet the definition of "substantially limited" is incorrect, because both cases depend on the *Toyota* standard of substantial limitation, which Congress has rejected.  *Compare* ADAAA § 4(a) *with* NESL Memo § IV(A).  NESL argues that Mr. Brodsky's lack of failure in other areas of his life is proof that his mental impairment does not substantially limit his ability to learn.  This argument should be rejected because of the ADAAA's requirement that "[a]n impairment that substantially limits one major life activity need not limit other major life activities."  ADAAA § 4(a).  The Amended Complaint documents Mr. Brodsky's mental impairments, as well as the substantial limitation his impairments have had on a major life activity (i.e. learning).  Because Mr. Brodsky has properly stated a claim that he has a disability, NESL's Motion for Dismissal of Counts I and II (the ADA), III and IV (the Rehabilitation Act) and VII and VIII (MERA) should be rejected.

**B.  Mr. Brodsky Has Properly Stated a Claim Under Amendment Article 114 of the Massachusetts Constitution.**

The Amended Complaint claims that NESL violated Amendment Article 114 of the Massachusetts Constitution by refusing to allow Mr. Brodsky any reasonable accommodations to remediate his handicap, thus excluding him from participating in and

benefitting from the NESL program.  *See* Mass. Const. amend. art. 114;  Compl. ¶¶ 34-

37.  NESL presents two arguments in support of its contention that Mr. Brodsky has

failed to state a claim under Article 114 in Counts V and VI.  First, NESL argues that Mr.

Brodsky "does not have a definitive right to bring a claim under the Massachusetts

Constitution…."  NESL Memo § IV(B).  Second, NESL argues that Mr. Brodsky's

Article 114 claim should be dismissed because he has also brought a claim under the

Massachusetts Equal Rights Act.  *See* NESL Memo § IV(B); G.L. c. 93, § 103(a)

("MERA").

> ### 1.  Massachusetts Courts Have Inferred, Not Precluded, a Private Right of Action in Article 114 Cases.

The lack of decision by Massachusetts courts regarding the issue of whether

Article 114 grants a private right of action does not preclude a private right of action, and

in fact courts have inferred such a private right.  In *Layne v. Superintendent, Mass.*

*Correctional Institution, Cedar Junction*, 406 Mass. 156 (1989), two prison inmates

brought discrimination claims against the state under the Massachusetts Civil Rights Act

and Article 114.  Footnote 3 of *Layne*, which NESL misquotes, infers that such a right

does exist.  *Compare Layne* at 159 n. 3 *with* NESL Memo § IV(B).  The actual language

of *Layne* footnote 3 is, "Because the State is involved, we need not consider whether art.

114 applies to private individuals. With little discussion of the point, the United States

Court of Appeals for the First Circuit may have ruled that it did in *Grubba v. Bay State*

*Abrasives, Div. of Dresser Indus., Inc.*, 803 F.2d 746, 747--748 (1st Cir. 1986)."  Because

Massachusetts has not determined whether a private right of action exists under Article

114, and because the United States Court of Appeals for the First Circuit has inferred that

such a private cause of action does exist, NESL's Motion to Dismiss Counts V and VI should be denied.

### 2.  Mr. Brodsky's Article 114 Claims Should Not Preempted.

NESL also argues that Counts V and VI should be dismissed because claims under Article 114 are precluded where redress is available under an existing statute, yet NESL fails to indicate what that "existing statute" is in Mr. Brodsky's case.  NESL depends on *Iwata v. Intel*, 349 F.Supp.2d 135, 157 (D. Mass 2004), which was an employment discrimination case.  This Court in *Iwata* determined that Article 114 should be preempted by G.L. c. 151B in employment cases.  *Id.* at 157.

NESL misinterprets *Iwata* to claim that Article 114 should not apply in the present case.  Mr. Brodsky's matter is unrelated to employment, and NESL fails to present any alternate paths which preempt Article 114 in Mr. Brodsky's case.  NESL argues in its memo that because Mr. Brodsky has also made a claim under MERA, "he cannot state a claim 'arising directly under the Massachusetts Constitution.'" NESL Memo § IV(B) (quoting *Iwata* at 157).  Even if MERA does provide an appropriate alternate path to Article 114 in certain circumstances, NESL has not argued, nor has this Court decided, that MERA is an appropriate and available path for Mr. Brodsky.  Therefore, NESL's Motion to Dismiss Counts V and VI should be denied.

### C.  Mr. Brodsky Has Properly Stated a Claim That NESL Breached the Terms of a Contract.

The amended complaint alleges that NESL violated the terms of its contract with Mr. Brodsky by preventing him from retaking failed courses, as required by the Student Handbook.  Compl. ¶¶ 63, 66.  In its Memorandum of Law, NESL ignores the section of the Handbook which Mr. Brodsky alleges was violated (§ A.4), and instead asserts that

Mr. Brodsky has not stated a claim simply because NESL followed a conflicting section of the Handbook regarding expulsion (§ A.2.c.2).  NESL Memo § IV(C); Defendant's Exhibit E.  The mutual allegations by Plaintiff and Defendant that each is ignoring various sections of the Handbook only serves to manifest that the Handbook has conflicting terms.  *See* Defendant's Exhibit E.

> **1.   The Conflicting Terms of the Student Handbook Should Be Construed Against NESL as the Author.**

When the terms of a contract are uncertain, the contract should be interpreted as against the drafter.  *Fenoglio v. Augat*, 254 F.3d 368, 372 n. 3 (1ˢᵗ Cir. 2001); *Lyons v. Salve Regina Coll.*, 565 F.2d 200, 202 (1ˢᵗ Cir. 1977).  When there is ambiguity, "the rule contra proferentem – that intendments will be made against the creator of the writing – becomes applicable." *Somerset Savings Bank v. Chicago Title Co.*, 37 Mass.App.Ct. 82, 89 (1994).

In the present case, Mr. Brodsky points to a section of the Student Handbook which required him to retake the failed courses, while NESL points to a section of the Student Handbook which it claims required NESL to expel Mr. Brodsky.  *Compare* Compl. ¶ 61 *with* NESL Memo § IV(C).  The two sections of the Student Handbook appear to conflict with each other, and thus create uncertainty.  Because NESL drafted its own Student Handbook, the conflicting terms should be resolved against NESL and in favor of Mr. Brodsky.

> **2.   NESL Did Not Allow Mr. Brodsky to Retake the Failed Classes, as Required by Student Handbook § A.4.**

The relationship between a college and a student is a contractual one, the terms of which are documented in the student handbook.  *See Havlik v. Johnson and Wales Univ.*

509 F.3d 25, 34 (1ˢᵗ Cir. 2007); *Schaer v. Brandeis Univ.*, 432 Mass. 474, 477 (2000).  If a college explicitly promises a process in a student handbook, "that process must be carried out in line with the student's reasonable expectations."  *Havlik* at 34.

NESL presents two cases regarding breach of contract, both of which can be distinguished from Mr. Brodsky's case.  *Essigmann v Western New England College*, 11 Mass. App. Ct. 1013 (1981); *Showell v. Boston University*, No. 935815, 2 Mass.L.Rptr. 368, 1994 WL 879638 (Mass. Super. Aug. 30, 1994); NESL Memo § IV(C).  *Essigmann* concerned a Western New England College law student who was expelled because of poor grades.  *Essigmann* at 1013.  The plaintiff in *Essigman* was permitted by the school to retake two failed courses, but was expelled after he failed a third course.  *Id.*  The plaintiff was unable to retake that third failed course because it was an optional course which the school had stopped offering.  *Id.*

*Showell* was a Massachusetts Superior Court case concerning a college student who claimed that the defendant failed to inform her about certain courses she needed to take for graduation.  *See Showell* at *1.  The court in *Showell* found that there was no breach of contract because the school had "effectively conveyed" its grading policy to the student. *Id.* at *3.

The facts of *Essigmann* are not only distinguishable from, but actually support, Mr. Brodsky's position.  While the law school in *Essigmann* allowed the plaintiff to retake the first two classes he failed, NESL refused to allow Mr. Brodsky to retake the two classes that he failed.  *Compare Essigmann* at 1013 *with* Compl. ¶¶ 63, 66 *and* NESL Memo § IV(C).  The third failed class which resulted in Essigmann's ultimate dismissal from school was an optional course which was no longer available after he failed it.

*Essigmann* at 1013.  Mr. Brodsky's failed courses, on the other hand, were required core courses which the student handbook indicated he "must retake."  Compl. ¶ 61; Defendant Exhibit E.

*Showell* is also distinguishable from Mr. Brodsky's case.  NESL states that the basis for the claim of the plaintiff in *Showell* was that the school failed to inform her about certain required courses.  NESL Memo § IV(C).  Mr. Brodsky's claim is the opposite.  Mr. Brodsky agrees with NESL that the courses in question were required, and does not dispute that he had notice that he needed to take them.  Compl. ¶¶ 4, 60-66.  He does not even dispute whether the grading policy was "effectively conveyed" to him.  Mr. Brodsky's breach of contract claim is that NESL did not follow its own policy as documented in the Student Handbook.  Compl. ¶¶ 63, 66.

> **D.  Mr. Brodsky Has Properly Stated a Claim That NESL Violated The Massachusetts Consumer Rights Statute (Chapter 93A).**
>
> > **1.  NESL Is Incorrect With Its Blanket Assertion That Non-Profit Institutions, Such As NESL, Do Not Engage In 'Trade Or Commerce' For Purposes Of c. 93A.**

NESL's assertion that it is not subject to c. 93A is incorrect, because in Massachusetts, "a charitable entity can engage in activities that are in service of its core charitable mission and still fall under the governance of G.L. c. 93A." *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 28, 679 N.E.2d 191, 209 n.37 (1997).  NESL made a very similar assertion as a defendant in the case of *Mass. Sch. of Law v. Amer. Bar. Assoc.*, 952 F. Supp. 884 (D.Mass. Jan. 10, 1997).  In *Mass. Sch. of Law*, the plaintiff sued NESL and other defendants in a dispute regarding plaintiff's accreditation and reputation.  *Id.* at 886.  In that case, NESL made an assertion that it was not subject to c. 93A because it was a non-profit educational institution engaged in providing legal

education to students, and thus not engaged in trade or commerce. This Court in *Mass. Sch. of Law* stated that this was an unsettled area of law, though "[t]he Supreme Judicial Court (SJC) has held that an organization's status as a ''charitable' corporation is not, in and of itself, dispositive of the issue of whether c. 93A applies.'" *Id.* at 890 n. 4 (quoting *Planned Parenthood v. Problem Pregnancy, Inc.*, 398 Mass. 480, 493, 498 N.E.2d 1044 (1986)). This Court offered guidance that c. 93A may apply to non-profits, depending on the transaction in question. *Mass. Sch. of Law*, 952 F. Supp. at 890 n. 4.

NESL uses two cases, both out of context, to argue that its non-profit status should shield it from c. 93A. NESL first refers to *Thornton v. Harvard Univ.*, 2 F.Supp. 2d 89 (D.Mass. 1998). In *Thornton*, a Harvard Law School graduate, who had been rejected in his application to participate in the school's low income loan repayment plan, brought several claims, among them a c. 93A claim based on an allegation that the school used misleading financial aid advertising. *Id.* at 95. The holding in *Thornton* is very specific to a college's administration of financial aid; it is not a declaration regarding non-profits or even the college-student relationship in general. *Id.* at 95.

The second case NESL uses is *Shin v. Massachusetts Institute of Technology*, No. 02-0403, 19 Mass. L. Rep. 570, 2005 Mass. Super. Lexis 333 (Mass. Super. June 27, 2005). In *Shin*, the plaintiff's c. 93A complaint was specific to the school's provision of medical care. *Id.* at *22. The school was found not liable under c. 93A because providing medical services was incidental to the school's educational mission. *Id.* Again, *Shin* does not stand for a general proposition that c. 93A does not apply to "non-profit institutions, such as NESL." *Compare Shin* at *22 *with* NESL Memo § D(1).

In *Silvers v. Assoc. Tech. Inst., Inc.*, No. 93-4253, 2 Mass. L. Rep. 611, 1994 Mass. Super. Lexis 506 (Mass. Super. Oct. 12, 1994), a student brought a c. 93A claim against a school after she was sexually assaulted and harassed while working in a placement suggested by the school. The school made no significant inquiry regarding the student placement, even though it had reason to know that the employment situation may be inappropriate for the student. *Id.* at *9. The school's Motion for Summary Judgment was denied because the facts indicated that the school had failed "to make the necessary inquiry." *Id.* at *10.

Mr. Brodsky's situation is much closer to *Silvers* than it is to either *Thornton* or *Shin*. As in *Silvers*, Mr. Brodsky took actions outside of school based on a suggestion by the school. Also as in *Silvers*, the school took no further investigative action. NESL's argument that it should avoid liability under c. 93A simply because of its non-profit status should fail, because a school's responsibility to not engage in unfair or deceptive acts should be no lower in a non-profit situation than it is in a for-profit situation.

### 2. NESL Incorrectly States That Mr. Brodsky's c. 93A Claim Is Just a Restatement of His Other Claims Based on Contract, ADA, Rehabilitation Act, or MERA.

NESL claims that Count IX of the Amended Complaint is simply a restatement of Mr. Brodsky's discrimination allegations. NESL Memo § D(2)(a). NESL uses *Mugavero v. Merrimack Valley Federal Credit Union, Inc.*, 1 Mass. L. Rptr. 300, 1993 Mass. Super. Lexis 229 (Mass. Super. 1993) to argue that Count IX should "yield to a statute with more specific language." NESL Memo § D(2)(a). *Mugavero*, a case dealing with employment discrimination, held that because G.L. c. 151B contained exclusive

remedies for employment discrimination, plaintiff's c. 93, § 102 claim "is inapplicable to disputes arising during the course of employment." *Id.* at *8.

Mr. Brodsky's case is very different.  He states a claim that NESL engaged in unfair and deceptive acts by not following the procedures regarding disability and readmission that NESL led him to believe would be followed.  Thus, NESL's argument that Mr. Brodsky's c. 93A claim is simply a restatement of other claims is incorrect and its Motion to Dismiss Count IX should be denied.

### 3. NESL Is Incorrect That Dean Sorenson's Guidance to Mr. Brodsky Was Simply "Opinion" and Not Actionable Under c. 93A.

NESL uses *Home Depot U.S.A., Inc. v. Rosencranz*, No. 93-4340-F, 1994 WL 287585 (Mass. Super. March 25, 1994) to infer that Dean Sorenson's guidance to Mr. Brodsky was nothing more than "opinion," and should not be actionable under c. 93A. NESL Memo § D(2)(b).  In *Home Depot*, the defendant had written a Letter to the Editor to a local newspaper, critical of the plaintiff.  The plaintiff sued for defamation and violation of c. 93A.  The holding was that there was no c. 93A claim "because the Letter contains statements of pure opinion which are not defamatory." *Home Depot* 1994 WL 287585 at *5.

In Mr. Brodsky's case, Mr. Brodsky had asked a dean of NESL how best to get back into the school.  Compl. ¶ 11.  The response was more than opinion - it was guidance from a dean that Mr. Brodsky should try to show academic success in a relevant program of study.  *Id.*; Compl. ¶ 51.  Because Dean Sorenson's advice was more than just opinion, NESL's Motion to Dismiss in regard to Count X should fail.

### 4. NESL Applies an Incorrect and Contradictory c. 93A Standard to Mr. Brodsky.

NESL's argument should fail because it incorrectly applies a c. 93A standard that is intended for two commercial parties. NESL states that its opinion regarding Mr. Brodsky's educational program could not "plausibly be said to 'raise an eyebrow of someone inured to the rough and tumble world of commerce.'" NESL Memo § D(2)(c) (quoting *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1513 (1st Cir. 1989)). That standard, though, is intended for two commercial parties under G.L. c. 93A § 11. *Silvers v. Assoc. Tech. Inst., Inc.*, 2 Mass. L. Rep. 611, 1994 Mass. Super. Lexis, at *9 (Mass. Super. Oct. 12, 1994). An individual "is not held to the more rigid standard applicable to businesses." *Id.* NESL contradicts itself by first arguing that it does not engage in commerce, while it then seeks the safety of the higher c. 93A commerce standard. *Compare* NESL Memo § D(1) *with* NESL Memo § D(2)(c). Because Mr. Brodsky was acting in an individual capacity, the standard applied by NESL should be viewed as incorrect, and its Motion to Dismiss denied.

**V.      CONCLUSION**

Based on the foregoing, Mr. Brodsky respectfully requests that this Court deny defendant's Motion to Dismiss, and grant any other relief it deems just.  If this Court deems that sufficient facts have not been pleaded, Mr. Brodsky respectfully asks this Court for leave to amend his complaint.

Respectfully submitted,

Seva Brodsky,
By his attorney,

*/s/ James M. Baron*
James M. Baron, BBO #669257
Law Office of James M. Baron
jbaron@lawbaron.com
9 Spring Street
Waltham, MA  02451
Tel (781) 209-1166

Dated: February 9, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 9, 2009.

*/s/ James M. Baron     BBO #669257*
jbaron@lawbaron.com